IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 05 C 4418 |
| ) | |
| GROUP LONG TERM DISABILITY ) | |
| INSURANCE and RELIANCE ) | |
| STANDARD LIFE INSURANCE ) | |
| COMPANY, ) | |
| ) | Wayne R. Andersen |
| Defendants. ) | District Judge |

## MEMORANDUM, OPINION AND ORDER

This case is before the court on the parties' cross-motions for summary judgment. This matter arises out of a claim for long-term disability benefits pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(b). For the following reasons, plaintiff Mark Williams' motion for summary judgment [20] is granted. Defendants' Group Long Term Disability Insurance and Reliance Standard Life Co. cross-motion for summary judgment [27] is denied. Plaintiff's request for reinstatement of benefits is denied, and this court orders an administrative remand to the plan administrator for a new review of Williams' claim for long-term disability benefits in proceedings consistent with this opinion.

## BACKGROUND

Plaintiff Mark Williams was employed as a software developer for Tellabs Operations Inc. Williams' job responsibilities included providing technical support for products and processing, troubleshooting problems, and developing and supporting software applications. As part of his employment with Tellabs, Williams was enrolled in defendant Group Long Term

Disability Insurance ("the Plan") for long-term disability benefits, which was underwritten by defendant Reliance Standard Life Insurance Co. Williams worked for Tellabs on a full-time basis until March 1, 2002 at which point he took a medical leave from work. He remained with Tellabs part-time until October 1, 2002 when he claimed he could no longer work due to nausea, light-headedness, and fatigue. (Administrative Record ("AR") 000368) On February 25, 2003, Williams filed an application for long-term disability benefits with Reliance that forms the basis of this dispute.

Under the policy, Reliance is obligated to pay long-term disability benefits if the beneficiary meets the Plan's definition of "Total Disability," which is defined as being unable to "perform the material duties of his/her regular occupation" for 180 days. (AR 000175-78) The Plan requires Reliance to pay monthly benefits only if a beneficiary "submits satisfactory proof of Total Disability." (AR 000185) If the disability is caused by mental or nervous disorders, which the Plan defines as including anxiety-related and depression-related disorders, Reliance only is obligated to pay benefits for 24 months. (AR 000215) Reliance also has the right under the Plan to have a beneficiary interviewed or examined physically, psychologically, and/or psychiatrically to determine the existence of any Total Disability. (AR 000181) The Plan states that "[t]his right may be used as often as it is reasonably required while a claim is pending." (*Id.*) Finally, the Plan gives Reliance "discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." (*Id.*)

In his application for long-term disability benefits, Williams stated that he had been diagnosed with Chronic Fatigue Syndrome ("CFS") and identified his symptoms as fatigue, nausea, headaches, cognitive problems, and low-grade fever. (AR 000215-16) Williams had been treated for many of these symptoms for several years before he filed his disability claim

with Reliance. Doctors had consistently diagnosed Williams with anxiety and depression, and in 1997, Williams also was diagnosed with CFS, Chronic Epstein Barr Virus, and Generalized Anxiety Disorder. (AR 000404) By December 2002, Williams' regular physician, psychiatrist Dr. George Paniotte, noted that Williams' depression and anxiety had been basically controlled but that his CFS symptoms had worsened. Dr. Paniotte referred Williams to a CFS specialist, Dr. Morris Papernik. In March 2003, Williams told his doctors that he had been unable to complete basic household chores and that he could not leave his home for more than four hours at a time. (AR 000378-82) Dr. Papernik concluded that Williams was "medically disabled due to multiple medical issues," and those issues interfered with Williams' "ability to concentrate, focus and recall recent events and instructions." (AR 000486)

After initially denying Williams' claim in October 2003, Reliance approved Williams' long-term disability claim in February 2004 and made a retroactive benefit payment dating back to August 2002. At that time, Reliance also reserved its right to continue to investigate Williams' claim. Seven months later, Reliance terminated his long-term disability benefit payments. Reliance based its decision on the review of Dr. William Hauptman, who is board-certified in Gastroenterology, Internal Medicine, and Quality Assurance and Utilization Review. Dr. Hauptman noted that Williams had showed improvement in anxiety-related and depression-related symptoms and that his CFS symptoms also had improved. (AR 000126) Dr. Hauptman concluded that "records suggest that psychiatric conditions including anxiety and depression are significant factors contributing to the patient's clinical presentation and may in fact be the primary factors." (AR 000330) However, Dr. Hauptman suggested neuropsychological testing might be needed to determine the severity of Williams' condition and the role psychological factors played in causing his problems. (*Id.*) Relying on Dr. Hauptman's report, Reliance

denied Williams' benefits because "we have determined that the condition actually causing the symptoms is a psychiatric condition. . . . It is our opinion that your condition is caused by a mental-nervous disorder and is limited by the policy to a 24 month maximum duration." (AR 000126) Nothing in Reliance's letter to Williams indicated that Reliance had concluded Williams failed to meet the Plan's definition of Total Disability.

In April 2005, Williams appealed Reliance's decision, arguing that Reliance had improperly characterized CFS as a mental/nervous disorder even though there was "overwhelming evidence of physical impairments." (AR 000020) To support his appeal, Williams, who served in the Navy for nearly 14 months until doctors placed him on medical leave in 1996, submitted documents from the Department of Veterans Affairs which showed that the agency had concluded Williams was 100 percent disabled as a result of Epstein Barr Syndrome. (AR 000091) Williams, however, did not submit any evidence of his anxiety and depression disorders to the Department of Veterans Affairs. Williams also submitted an evaluation from Dr. Julian Freeman, who concluded that, while she could not diagnose Williams with CFS, his "functional limitations are of organic, and not non-organic psychological origin." (AR 000064) Williams also submitted a December 2004 report from Dr. Papernik, who found that Williams was "unable to do even sedentary work," (AR 000084), as well as numerous letters from family and friends documenting how much difficulty Williams had performing everyday tasks.

At this point, Reliance asked Williams for the first time to attend a neuropsychological evaluation. Williams, on the advice of counsel, refused to submit to any evaluation. Reliance then sent Williams' file to Dr. Robert Hanlon, a neuropsychologist. After reviewing the file, Dr. Hanlon noted that "the degree of [Williams'] vocational impairment is indeterminable." (AR

4

000281) Dr. Hanlon also suggested, in response to a question from Reliance, that neuropsychological testing would be necessary in order to identify objectively the extent of any cognitive impairments. (*Id.*)

On July 20, 2005, Reliance notified Williams of its decision to affirm the denial of his benefits. In its letter, Reliance asserted two reasons for denying the claim: (1) Williams had not provided any proof of his impairment, and (2) any disability was likely due to Williams' psychiatric disorders. (AR 000006) Having exhausted the internal appeals process, Williams filed this lawsuit seeking to reinstate his benefits under § 502(a)(1)(B) of the Employee Retirement Income Security Act.

## DISCUSSION

Both Williams and Reliance have moved for summary judgment pursuant to Federal Rule of Civil Procedure Rule 56. A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions of fact, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the nonmoving party. *See Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The nonmoving party must then set forth specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). On cross-motions for summary judgment, the court "considers the merits of each cross-motion separately and draws all reasonable inferences and resolves all factual uncertainties against the party whose motion is under consideration."

*Kazenas v. Oracle Corporation's Long Term Disability Plan*, 2004 WL 603468 (N.D.Ill. Mar. 24, 2004) (internal quotations omitted).

## I. Standard of Review Under ERISA

Under ERISA, a court reviews a plan's denial of benefits *de novo* unless the employee welfare benefit plan gives the administrator discretionary authority to determine eligibility. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In determining whether a plan administrator has discretionary authority, the court looks to the plain language of the plan. *See Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000). Here, the Plan states:

> Reliance Standard Life Insurance shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits.

(AR 000181) When an ERISA fiduciary is given discretionary authority to determine eligibility for benefits, a decision to deny benefits will be reviewed under an arbitrary and capricious standard. *See Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan.*, 195 F.3d 980 (7th Cir. 2000). Neither party disputes that this provision gives Reliance discretionary authority.

Nevertheless, despite the Plan's clear reservation of discretionary authority, Williams argues that this court should examine his case *de novo* because Illinois law prohibits discretionary clauses. Specifically, Williams relies on Section 2001.3 of the Illinois Administrative Code, which prohibits insurance companies from including any clauses reserving discretionary authority in contracts in Illinois. *See* ILL. ADMIN. CODE tit. 50, § 2001.3. However, the Code provision Williams uses to support his argument took effect in July 2005, and the disability policy was issued well before this date. Illinois courts consistently have held

6

that a change in the law may only be applied retroactively if it involves a procedural change. *See, e.g., People v. Atkins*, 838 N.E.2d 943, 947 (Ill. 2005). Although the line between procedure and substance is often difficult to draw, this court concludes that a law governing the amount of discretion an insurance company has when reviewing benefits has a substantive impact. Because the insurance policy was approved by the Illinois Department of Insurance in 1994, and because the retroactive application of Illinois law would have a substantive impact, the court rejects Williams' argument for a *de novo* standard of review and instead applies the more deferential arbitrary and capricious standard. *See also Guerrero v. Hartford Financial Services Group*, 2006 WL 1120526 (N.D.Ill. Apr. 26, 2006) (rejecting a similar argument without examining whether Section 2001.3 constituted a procedural or substantive change).

## II. Reliance Acted Arbitrarily and Capriciously in Denying Williams' Request for Long-Term Benefits

As the Seventh Circuit has explained, "[t]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action, and any questions of judgment are left to the administrator of the plan." *Trombetta v. Cragin Fed. Bank for Savings Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996). Moreover, "[a]bsent special circumstances such as fraud or bad faith, the [plan administrator's] decision may not be deemed arbitrary and capricious so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision." *Id.* "The objective is not to determine if [the plan administrator's] decision is correct, but only if it is reasonable." *Davis v. Unum Life Ins. Co. of America*, 444 F.3d 569, 578 (7th Cir. 2006).

Review under this standard, however, "is not a rubber stamp." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003). A plan administrator's

decision will not stand if it "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it], or is so implausible that it could not be ascribed to a difference in view or the product of its expertise." *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). Under an arbitrary and capricious standard, this court's review is limited to the information submitted to the plan administrator. *See Perlman v. Swiss Bank Corp. Comprehensive Disability Plan*, 195 F.3d 975, 980-82 (7th Cir. 2000).

### *A. Williams did not receive adequate notice informing him why his claim was denied*

In support of its decision to terminate benefits, Reliance relies heavily on the fact that Williams did not provide objective proof that he met the Plan's definition of Total Disability. ERISA requires every employee benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). The Seventh Circuit has held that ERISA "requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for a 'full and fair review' by the administrator." *Halpin v. W.W. Grainger*, 962 F.2d 685, 688-89 (7th Cir. 1992). In *Halpin*, the plan administrator denied the plaintiff's request for benefits by concluding that the plaintiff failed to meet the plan's definition of total disability. In finding that the plan administrator's letter did not meet the regulatory requirements, the Seventh Circuit noted that the letter lacked a "description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." *Id.*, at 691; *see also* 29 C.F.R. § 2560.503-1(g).

8

In a previous review of Williams claim for long-term disability benefits, Reliance provided unequivocal notice of Williams' failure to meet the Plan's definition of Total Disability. On August 21, 2003, more than 13 months before the denial at issue in this case, Reliance concluded that "[m]edical records do not offer proof of significant level of fatigue nor were lab studies significant to commensurate with impairment and we have not been provided with proof of total disability." (AR 000155) Williams appealed that decision, and Reliance determined in February 2004 that additional investigation was necessary and that Williams should be paid benefits while it continued its evaluation. (AR 000140-41)

Yet after it completed its investigation, Reliance decided on September 27, 2004, that Williams failed to qualify for long-term disability benefits not because he failed to meet the Plan's definition of Total Disability, but because Williams' disabling symptoms were caused by a mental condition. (AR 000126) Specifically, Reliance concluded:

> [W]e have determined that the condition actually causing the symptoms is a psychiatric condition. Anxiety and depression are significant factors contributing to your clinical presentation and may be in fact the primary factors. It is our opinion that your condition is caused by a mental-nervous disorder and is limited by the policy to a 24 month maximum duration. Because the twenty four (24) has been exceeded we will close your file. . . . We hope this letter fully explains our determination as it relates to the application of your Long Term disability claim as a result of a mental nervous disorder, specifically depression.

(AR 000126). That letter placed Williams on notice that he needed to submit evidence only showing that he did not suffer from a mental disorder in order to receive benefits, and made no reference to whether Williams met the Plan's definition of Total Disability.

However, in its July 20, 2005 letter informing Williams his appeal was unsuccessful, Reliance stated that "*the degree of Mr. Williams' vocational impairment is not supported* and it is likely that any functional disability is due to his psychiatric disorders(s)." (AR 000006)

9

(emphasis added) Additionally, Reliance strongly argues before this court that its decision to deny Williams' benefits was based on its conclusion that Williams did not sufficiently show he was disabled. (Def.'s Reply Memo. 5-6) Such an approach runs contrary to the purpose of the internal review process. If Reliance's decision to deny Williams' benefits was based on its conclusion that Williams did not prove he was totally disabled, Reliance failed to provide adequate notice setting forth the reasons for its denial in its letter as required by Section 1133(1). Nor did Reliance give Williams an opportunity to perfect his claim, as 29 C.F.R. § 2560.503-1(g) requires, by indicating that the additional materials needed to support his claim should deal with the issue of whether he met the Plan's definition of Total Disability.

Accordingly, this court finds that Reliance acted unreasonably by basing its decision to deny Williams' request for long-term disability benefits on a failure to prove his disability when Reliance did not mention such a basis for its decision in its initial denial of benefits. By failing to provide Williams with adequate notice of its decision, Reliance ultimately denied Williams an opportunity to perfect his claim on appeal.

### B. *Reliance acted unreasonably by finding that mental disorders caused Williams' disability*

Reliance also argues it acted reasonably by concluding Williams' symptoms arose from a mental, rather than a physiological, cause. When evaluating a plan administrator's decision to deny benefits under the arbitrary and capricious standard, the Seventh Circuit has instructed courts to consider: (1) the impartiality of the decisionmaking body, (2) the complexity of the issues, (3) the process afforded the parties, (4) the extent to which decisionmakers utilized the assistance of experts when necessary, and (5) the soundness of the fiduciary's rationale. *See Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir. 1995). After examining the record,

this court finds that at least three of the *Chalmers* factors laid out by the Seventh Circuit weigh in Williams' favor and determines that Reliance acted arbitrarily and capriciously when it concluded Williams' condition was caused by a mental disorder.

In viewing the complexity of the issues presented by Williams' claim, the record shows that Williams' multiple diagnoses indicate that, while his doctors believe his disability is apparently caused by a physiological disorder, the exact nature of his affliction is difficult to determine. Because of the extent to which the record reveals both Williams and his doctors believed a connection existed between CFS and Williams' condition, this court pays special attention to the difficulty that a CFS-related claim causes beneficiaries and long-term disability plan administrators alike. The Seventh Circuit, in a case involving a plaintiff who claimed she suffered from fibromyalgia, noted how that disorder and CFS share a number of features:

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. . . . Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not and the question is whether Sarchet is one of the minority.

*Sarchet v. Chater*, 78 F.3d 305, 306-7 (7th Cir. 1996). Another court in this district also has recognized that CFS patients' claims are inherently complex because "no medical test exists for the diagnosis of CFS." *Gawrysh v. CAN Ins. Co.*, 8 F.Supp.2d 791, 794 (N.D.Ill. 1998).

In examining the extent to which Reliance utilized the assistance of experts when necessary, this court finds particularly instructive the analysis of the court in *Sexton v. Deloitte & Touche LTD Plan*, 2003 WL 1701382 (D.Minn. Mar. 27, 2003). In *Sexton*, the plaintiff was diagnosed with multiple sclerosis ("MS") and also suffered from MS-related fatigue. The plaintiff's personal statement, letters from family members, co-workers, and two doctors made

the plaintiff's fatigue a primary issue. In overturning the plan administrator's decision to deny benefits under a *de novo* standard of review, the court noted:

> [W]ith the issue of MS undisputably on the table, MetLife's decision to assign a psychologist and psychiatrist to review Ms. Sexton's file, rather than a physician with substantive experience with MS, is inexplicable at best, and, at worst, smacks of a determination to find a psychological rather than physiological cause for her impairment.

*Id.* at *6.

In this case, the record reveals the extent to which Williams, his doctors, and his family and friends claimed he suffered from CFS and CFS-related symptoms. Yet Reliance relied on a gastroenterologist and a neuropsychologist to evaluate the William's claim when his doctors had unanimously concluded suffered from a difficult-to-diagnose physiological disorder. Reliance also ignored Dr. Hauptman's suggestion that his report alone might be insufficient in determining the severity and cause of Williams' impairment and that further examination might be necessary until after Reliance made its initial determination that Williams suffered from a mental condition. (AR 000330) Accordingly, this court concludes that Reliance acted unreasonably by failing to utilize the assistance of experts when their assistance was needed in evaluating Williams' claim.

Finally, in evaluating the soundness of Reliance's rationale, the record indicates that the only possible basis upon which Reliance could rely to uphold its original determination that Williams suffered from a mental condition was Dr. Hanlon's report. Dr. Hanlon concluded that it was "extremely likely" that Williams' disability was "in part, due to his psychiatric disorder(s)" and that "it is reasonable to conclude that he suffers from both a chronic anxiety disorder and a chronic mood disorder." (AR 000282) However, neither Reliance nor Dr. Hanlon's report provided a basis for understanding why Reliance reached a different result from

Dr. Papernik, Dr. Freeman, and the Department of Veterans Affairs, who all concluded that a physiological disorder caused Williams' disabling conditions. Although Reliance is not necessarily required to explain why it reached a different result than the doctors who examined Williams, Reliance states that each review initiated by Williams led to a different diagnosis. (AR 000001-6) By apparently rejecting the various diagnoses because they differed from each other, but ignoring the fact that all three diagnoses determined Williams suffered from a physiological condition, Reliance undercuts the soundness of its determination that Williams' impairment was caused by a mental disorder.

In summary, the aforementioned deficiencies, when viewed in the aggregate, are enough for this court to conclude that Reliance abused its discretion as plan administrator and acted arbitrarily and capriciously when it determined Williams' disabling condition was caused by a mental disorder.

### III. Williams' Failure to Submit to Neuropsychological Evaluation Does Not Bar Him from Recovery

In its cross-motion for summary judgment, Reliance argues it could not have acted arbitrarily and capriciously because it fulfilled its obligation to properly investigate Williams' claim by requesting a neuropsychological examination during the appeal process. Under the terms of the policy, Reliance has the right to request evaluations "as often as it is *reasonably required* while a claim is pending." (AR 000181) (emphasis added) Reliance interprets this provision to argue that when it requested an examination, and Williams fails to comply, Reliance is entitled to deny benefits because Williams did not submit satisfactory proof that he was totally disabled or suffered from a physical disorder. This court disagrees.

13

The Seventh Circuit has held that an insurance company that denies a claim for ERISA benefits does not act arbitrarily and capriciously when it makes a reasonable request for evidence from the plaintiff, the plaintiff fails to provide that evidence, and the insurer subsequently bases its decision to terminate benefits on its limited information. *See Bali v. Blue Cross and Blue Shield Ass'n*, 873 F.2d 1043 (7th Cir. 1989). This court could find no Seventh Circuit case directly addressing the reasonableness of an insurance company request for a new examination for the first time when it reviews a denial of benefits. However, at least two other courts that have considered this issue viewed the actions of the insurance company in a negative light. *See Sidou v. Unumprovident Corp.*, 245 F.Supp.2d 207 (D.Me. 2003) (plan administrator acted unreasonably by requesting an examination after the applicable deadline for ruling on an appeal); *Kosiba v. Merck & Co.*, 384 F.3d 58 (3rd Cir. 2004) (a plan administrator's decision to request an independent examination at the appeal stage warranted heightened scrutiny).

Reliance argues that its request was reasonable because Williams submitted new information for the first time on appeal. That argument fails to persuade this court for two reasons. First, at the initial claim review, Dr. Hauptman suggested such an examination might be needed even before Reliance terminated Williams' benefits, yet Reliance took no action. Second, the information submitted by Williams at the appeal stage can be classified into two categories: (1) diagnoses that determined Williams suffered from a physiological disorder, and (2) examples of the disabling condition of Williams' symptoms. The record indicates that both types of information were available when Dr. Hauptman examined Williams' file and Reliance initially denied Williams' benefits, but Reliance did not believe a neuropsychological examination was necessary. Only after Williams deluged Reliance with information similar in

14

substance to what the record indicates was already on file did Reliance believe additional testing was needed.

This court is hesitant to conclude that an insurance company can act reasonably by requesting an examination of a claimant for the first time at the appeal stage when the company's own consultant suggested such an examination might be necessary before the claim initially was denied and no new information has been submitted in support of the claim. Reliance's request for a neuropsychological examination, although made late in the claim review process, emphasizes its intention to conduct a thorough investigation. *See Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1148 (7th Cir. 1998). However, this court finds that the request Reliance made for a neuropsychological examination for the first time on appeal was unreasonable, and therefore it also was unreasonable for Reliance to use the fact that Williams refused to submit to an examination as support for denying his claim on appeal.

Accordingly, Reliance's motion for summary judgment is denied, and Williams' motion for summary judgment is granted.

## IV. Administrative Remand is the Appropriate Remedy

Under ERISA, remedies are based on equitable principles and therefore courts have discretion to fashion an appropriate remedy in any given case. *See* 29 U.S.C. § 1132(a)(3). Courts typically choose between remanding the case to the plan administrator for further proceedings or reinstating benefits. *See Quinn v. Blue Cross and Blue Shield Ass'n*, 161 F.3d 472 (7th Cir. 1998) (remanding case to plan administrator); *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771 (7th Cir. 2003) (reinstating benefits). In determining what remedy is most appropriate, the Seventh Circuit has directed courts to look at whether the claimant already had been initially determined to be entitled to benefits. *See Hackett*, 315 F.3d

15

at 776. "In a case where the plan administrator did not afford adequate procedures in its *initial* denial of benefits . . . [the correct remedy] is to provide the claimant with the procedures she sought in the first place" and remand the claim to the plan administrator. *Id.* (emphasis added). By contrast, reinstatement of benefits is most appropriate when the claimant has already been determined to be entitled to benefits, and there is no evidence in the record to support a subsequent termination of those benefits. *Quinn*, 161 F.3d at 477.

Williams asks this court to reinstate his benefits. However, after reviewing the record, this court believes remand is the better remedy. Reinstatement might have been appropriate had Reliance awarded Williams benefits, and then based its decision to terminate benefits solely on Williams' failure to meet the Plan's definition of Total Disability. That is not the case here. Reliance needed to examine whether Williams' symptoms were caused by a mental or physiological disorder to determine whether his benefits should continue after 24 months. The record does not indicate that Reliance made any initial finding that Williams' condition was caused by a physiological condition. Thus, Reliance's decision that Williams suffered from a mental condition, although made arbitrarily and capriciously, is the equivalent of an initial determination of eligibility for benefits, and remand is the most appropriate remedy. *See Hackett*, 351 F.3d at 776. "The fact that the plan administrator failed to provide the adequate procedures does not mean that the claimant is automatically entitled to benefits—such a holding might provide the claimant 'with an economic windfall should [he] be determined not disabled upon a proper reconsideration.'" *Id.* (*quoting Quinn*, 161 F.3d at 748).

Ordering Reliance to reinstate benefits in effect requires this court to decide simultaneously that Williams meets the Plan's definition of Total Disability and that his disability is not caused by a mental disorder. Such a conclusion would require this court to

16

substitute its judgment for that of the plan administrator. This court cannot make that determination based on the record. *See Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996), *cert. denied*, 521 U.S. 1129 (1997).

When it reviews Williams' claim anew, Reliance is entitled to exercise its right to have Williams undergo a neuropsychological examination if it so chooses. It is important to note that with this opinion, this court has neither determined that Williams meets the Plan's definition of Total Disability nor that Reliance's decision to terminate benefits was incorrect. This court finds only that Reliance acted arbitrarily and capriciously in reviewing Williams' claim. *See Quinn*, 161 F.3d at 476.

## CONCLUSION

For the foregoing reasons, plaintiff Mark Williams' motion for summary judgment [20] is granted and defendants' Group Long Term Disability Insurance and Reliance Standard Life Co. cross-motion for summary judgment [27] is denied. Williams' request for reinstatement of benefits is denied, and this case is remanded to the plan administrator to review Williams' claim for long-term disability benefits anew in proceedings consistent with this opinion.

IT IS SO ORDERED.

Wayne R. Andersen
United States District Judge

Dated: AUG 2 - 2005

17